**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| TRUSTEES – NORTHERN NEVADA LABORERS HEALTH & WELFARE TRUST FUND et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | 3:09-cv-00525-RCJ-VPC |
| vs. | ) ) | |
| RANDY'S BLASTING, INC. et al., | ) ) ) | **ORDER** |
| Defendants. | ) ) | |

This is an action by eight Plaintiffs in their capacities as trustees for four Nevada union trust funds (collectively, "Trustees") to collect allegedly delinquent contributions from two California employers. Pending before the Court is Trustees' motion for offensive summary judgment. For the reasons given herein, the Court denies the motion.

**I.   FACTS AND PROCEDURAL HISTORY**

Defendants Randy's Blasting, Inc. and Messer Construction, Inc. are alleged to be California corporations doing business in Nevada during the relevant time periods. (*See* Compl. ¶¶ 4–5). Randy's Blasting is also known as Western Blasting Technologies, Inc. ("Western"). (*See id.* ¶ 4). No domestic or foreign companies called "Randy's Blasting" or "Messer Construction" have apparently ever been registered to do business in Nevada, but Western is a California corporation that registered for a foreign qualification in Nevada, and that qualification has been permanently revoked. *See* Nevada Secretary of State, Business Entity Search, http://nvsos.gov/sosentitysearch (last visited Feb. 14, 2011).

Trustees allege that on June 1, 1999, Defendants signed a Short Form Agreement ("SFA"), which incorporated a 1995 Master Agreement ("MA"), (collectively, the "Collective Bargaining Agreements" or "CBA"). (*See* Compl. ¶¶ 11–13). The CBA require certain contributions to the Northern Nevada Laborers Health & Welfare Trust Fund, the Laborers Pension Trust Fund for Northern Nevada, the Construction Workers Vacation Savings Trust Plan, and the Laborers Training Trust for Northern Nevada (collectively, the "Trust Funds"). (*See id.* ¶¶ 1, 14–15). The CBA also required Defendants to make provisions in their subcontracts for subcontractors to observe the CBA, and Defendants agreed to be responsible for their subcontractors' delinquent payments. (*See id.* ¶ 16). Defendants also agreed to submit monthly employer contribution reports and to permit Trustees to inspect their books. (*See id.* ¶ 17). Trustees allege Defendants failed to report and contribute all hours worked by employees and have failed to satisfy Trustees' demands for payment, interest, liquidated damages, and corrected reports. (*See id.* ¶¶ 19–20).

Trustees sued Randy L. Messer and his two corporations, Randy's Blasting and Messer Construction, (collectively, "Randy's") in this Court on three causes of action: (1) Unpaid Contributions Under ERISA §§ 502 and 515 (damages); (2) Failure to File Accurate Monthly Reports Under ERISA §§ 502 and 515 (injunctive relief); and (3) Audit Under ERISA §§ 502 and 515 (injunctive relief). Trustees have moved for offensive summary judgment, claiming that Randy's is liable for the following amounts: (1) $44,476.57 for delinquent payments due January 1, 2003 through March 31, 2010, plus audit fees, collection costs, and attorney's fees accruing after October 31, 2010, as well as interest and double interest accruing after October 31, 2010; (2) $10,333.77 in unpaid fringe benefit contributions under § 502(g)(A), 29 U.S.C. § 1132(g)(A); (3) $7275.20 in interest through October 31, 2010, plus the greater of liquidated damages or doubled interest under § 502(g)(B), 29 U.S.C. § 1132(g)(B); (4) $18,000 in payroll audit costs under § 502(g)(E), 29 U.S.C. § 1132(g)(E); and (5) $8867.60 in collection costs and

attorney's fees under § 502(g)(D), 29 U.S.C. § 1132(g)(D).

## II.     SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing

party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   ANALYSIS**

Trustees' Exhibit 2 is a photocopy of a one-page document entitled "Laborers' Local 169 - Short Form Agreement" that is dated June 1, 1999 and signed by Randy L. Messer on behalf of "Randy;s Blasting [sic]/Messer Construction." (*See* SFA, June 1, 1999, ECF No. 9 Ex. 2).  The SFA binds Randy's to the MA dated June 1, 1995, as well as all trust agreements contemplated in the MA. (*See id.* (first and second unnumbered paragraphs)).  The MA was between Local 169 and the Nevada Chapter of the Associated General Contractors of America, Inc. (the "Chapter") (*See id.*).  Next, the SFA purports to bind Randy's to "any amendments, modifications, changes, extensions, renewals or successor agreements" to the MA. (*See id.* (third unnumbered paragraph)).  The SFA would terminate upon notice, as governed by the MA, or upon termination of the MA itself, and notice to the Chapter would be deemed notice to Randy's. (*See id.* fourth unnumbered paragraph)).

1    Trustees attach additional evidence, but they nowhere attach a copy of the 1995 MA or
2 the relevant trust agreements incorporated thereunder.  The Court cannot determine that Randy's
3 is properly bound to any successor agreements to the 1995 MA, because the contractual
4 requirements of notice alleged by the SFA to be in the 1995 MA are not available.  Excerpts
5 from a successor MA are attached, but it is not clear when that MA took effect or whether there
6 was any intervening MA.  The cover page of the successor MA adduced bears the dates 2004
7 and 2010.  The excerpts of the successor MA adduced refer only to trust agreements that are not
8 themselves adduced.  Also, the successor MA adduced is unsigned; it contains blank signature
9 blocks for the Chapter and Local 169.  The copies of the trust agreements adduced are dated
10 October 8, 2008, and it is not clear Randy's is bound by these without an examination of the
11 missing evidence noted above.  Trustees also include a copy of a decision of a board of
12 adjustment finding Randy's to be bound to the successor MA, however the board consisted
13 purely of union representatives, as Randy's did not appear.  The board does not indicate in its
14 decision its statutory or contractual authority for ruling as it did against Randy's.
15    Trustees, however, also adduce an order from Case No. 2:06-cv-01385-JCM-GWF, a
16 case in which Western sued the Trustees.  In that order, Judge Mahan noted that Randy Messer
17 had sent a letter directly to the Trust Funds during the appropriate window of time in 2000 to
18 prevent being bound by a successor MA, but he did not send the notice to the union itself.  Judge
19 Mahan ruled that Western therefore remained bound by successor agreements in 2000 and 2004.
20 This issue is therefore precluded from relitigation here.
21    Summary judgment is still not appropriate, however, because Randy's disputes that any
22 of its employees performed any work at all in Nevada during the relevant time periods.  Trustees
23 produce the affidavit of their auditor, Kristen Burgess, who attests only that she and others
24 estimated the hours they believe Randy's employees worked in Nevada during the relevant time
25 periods.  There is a material question of fact over how many hours Randy's employees, if any,

1  worked in Nevada during the relevant time periods.  And although Western is a successor to
2  Randy's, but it is not clear Messer Construction is bound by Judge Mahan's order in the '1385
3  case.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 9) is DENIED.

IT IS SO ORDERED.

DATED:  This 5th day of July, 2011.

_____
ROBERT C. JONES
United States District Judge