1

2

3

4
               **UNITED STATES DISTRICT COURT**

5
                    **DISTRICT OF NEVADA**

6

7
TRUSTEES – NORTHERN NEVADA    )
LABORERS HEALTH & WELFARE TRUST   )
FUND et al.,                                  )

8
                              )
              Plaintiffs,         )         3:09-cv-00525-RCJ-VPC

9
                              )
      vs.                     )

10
                              )             **ORDER**
RANDY'S BLASTING, INC. et al.,        )

11
                              )
             Defendants.      )

12
_____ )

13
       This is an action by eight Plaintiffs in their capacities as trustees for four Nevada union

14
trust funds (collectively, "Trustees") to collect allegedly delinquent contributions from two

15
California employers.

16
**I.       FACTS AND PROCEDURAL HISTORY**

17
       Defendants Randy's Blasting, Inc. and Messer Construction, Inc. are alleged to be

18
California corporations doing business in Nevada during the relevant time periods. (*See* Compl.

19
¶¶ 4–5, Sept. 9, 2009, ECF No. 1).  Randy's Blasting is also known as Western Blasting

20
Technologies, Inc. ("Western"). (*See id.* ¶ 4).  No domestic or foreign companies called "Randy's

21
Blasting" or "Messer Construction" have apparently ever been registered to do business in

22
Nevada, but Western is a California corporation that obtained its foreign qualification in Nevada

23
in March 2002, but whose qualification was permanently revoked after the entity apparently

24
failed to file its list of officers in April 2002. *See* Nevada Secretary of State, Business Entity

25
Search, http://nvsos.gov/sosentitysearch (last visited Jan. 10, 2013).

1    Trustees allege that on June 1, 1999, Defendants signed a Short Form Agreement

2  ("SFA"), which incorporated a 1995 Master Agreement ("MA"), (collectively, the "Collective

3  Bargaining Agreements" or "CBA"). (*See* Compl. ¶¶ 11–13).  The CBA require certain

4  contributions to the Northern Nevada Laborers Health & Welfare Trust Fund, the Laborers

5  Pension Trust Fund for Northern Nevada, the Construction Workers Vacation Savings Trust

6  Plan, and the Laborers Training Trust for Northern Nevada (collectively, the "Trust Funds"). (*See*

7  *id.* ¶¶ 1, 14–15).  The CBA also required Defendants to make provisions in their subcontracts for

8  subcontractors to observe the CBA, and Defendants agreed to be responsible for their

9  subcontractors' delinquent payments. (*See id.* ¶ 16).  Defendants also agreed to submit monthly

10  employer contribution reports and to permit Trustees to inspect their books. (*See id.* ¶ 17).

11  Trustees allege Defendants failed to report and contribute all hours worked by employees and

12  have failed to satisfy Trustees' demands for payment, interest, liquidated damages, and corrected

13  reports. (*See id.* ¶¶ 19–20).

14    Trustees sued Randy L. Messer and his two corporations, Randy's Blasting and Messer

15  Construction, (collectively, "Randy's") in this Court on three causes of action: (1) Unpaid

16  Contributions Under ERISA §§ 502 and 515 (damages); (2) Failure to File Accurate Monthly

17  Reports Under ERISA §§ 502 and 515 (injunctive relief); and (3) Audit Under ERISA §§ 502

18  and 515 (injunctive relief).  Trustees moved for offensive summary judgment, arguing that

19  Randy's was liable for the following amounts: (1) $44,476.57 for delinquent payments due

20  January 1, 2003 through March 31, 2010, plus audit fees, collection costs, and attorney's fees

21  accruing after October 31, 2010, as well as interest and double interest accruing after October 31,

22  2010; (2) $10,333.77 in unpaid fringe benefit contributions under § 502(g)(A), 29 U.S.C.

23  § 1132(g)(A); (3) $7275.20 in interest through October 31, 2010, plus the greater of liquidated

24  damages or doubled interest under § 502(g)(B), 29 U.S.C. § 1132(g)(B); (4) $18,000 in payroll

25  audit costs under § 502(g)(E), 29 U.S.C. § 1132(g)(E); and (5) $8867.60 in collection costs and

1   attorney's fees under § 502(g)(D), 29 U.S.C. § 1132(g)(D).  The Court denied the motion for

2   summary judgment because the evidence Trustees adduced was insufficient to show that

3   Defendants were bound to any relevant CBA, and although that issue may have been precluded

4   from relitigation (at least as to one Defendant) by a previous case determined by another judge of

5   this District, Trustees had still failed to adduce any evidence indicating that any of Defendants'

6   employees had performed any work in Nevada during the relevant time periods, which was

7   Defendants' primary argument in response.

8          At the hearing on the motion for summary judgment, counsel indicated they had reached a

9   settlement.  The Court refused to give the settlement its imprimatur and ordered counsel for

10  Plaintiffs, Mr. Carter,  to show cause why he and an affiant should not be sanctioned under Rule

11  11:

12         for filing a pleading which incorporates a declaration knowing it is false, to the extent
           it claims that records were not maintained and/or records were not turned over; and
13         second, for an ulterior purpose, that is, extortionate purpose to cause the defendant
           to enter into a new contract simply on the basis of charges for moneys due to the trust
14         funds which are not in fact due.

15  The Court also ordered Mr. Carter to show cause at the same hearing why he should not be

16  reported to the State Bar.

17         At the show cause hearing, the Court asked Mr. Carter whether he still contended that his

18  position in the Complaint was correct, i.e., that Defendants had employed labor in Nevada during

19  the relevant time periods, and if so what his basis for believing that was. (*See* Hr'g Tr. 8–9, Aug.

20  1, 2011, ECF No. 26).  Mr. Carter responded that there was "the possibility that the work was

21  being performed in Nevada," (*id.* 8:11), that Messer was licensed to perform work in Nevada,

22  (*id.* 9:3–4), that there was "a mining project going on in Nevada," (*id.* 9:4–5), and that he had

23  read in the newspaper that the owner of a mine had allegedly told a reported that he used

24  temporary workers at the mine in Nevada, (*see id.* 9:5–7).  This evidence would be sufficient for

25  a person to believe that some company was performing work at the mine.  But it was not

1   sufficient for a person to believe in good faith that a particular company (one of Defendants) was

2   providing the workers simply because that company, or another company with the same owner,

3   had at some point in the past done some similar work in Nevada.  The fling of the Complaint in

4   this case was a classic fishing expedition with no good faith basis of liability.  Defendants

5   explained that no workers performed work in Nevada during the relevant time periods, but that

6   only non-covered owners and other management personnel were ever present at the relevant mine

7   site, to do exploratory work, and that fact was made clear to Plaintiffs both before and after the

8   suit was filed. (*See id.* 13–15).

9         The Court asked Defendants whether they had agreed to settle the suit based upon any

10  arguable risk of liability, and Defendants replied that they had settled the suit purely to avoid

11  further legal costs. (*See id.* 23:13–25).

12        The Court again asked Mr. Carter for any good faith basis upon which he could have filed

13  the Complaint, and Mr. Carter replied that as to the Complaint, Plaintiffs were suing for an audit

14  and any delinquencies *that might be revealed*, and that the basis for the motion for offensive

15  summary judgment was the result of an audit report there with no evidence from the auditor of

16  any wages paid in Nevada for which contributions were not made, but only an estimate of

17  delinquent contributions based upon certain *assumptions* of hours worked in Nevada. (*See id.*

18  32–41).

19        The Court ruled that it would refer Mr. Carter to the State Bar for filing the Complaint

20  and motion for summary judgment without sufficient basis under Rule 11, for submitting a

21  knowingly false or misleading affidavit in support of the motion, for bringing the Complaint for

22  an improper and extortionate purpose, i.e., to induce Defendants to sign another CBA or to

23  obtain a monetary settlement knowing that there was no basis in law for one. (*See id.* 41–42).

24  The Court also indicated that it would grant summary judgment to Defendants based upon their

25  response to Plaintiffs' motion and Plaintiffs' reply to that response. (*See id.* 42).  The Court did

1    not hold any person in contempt but ordered Rule 11 sanctions against Mr. Carter measured by

2    the dames caused, i.e., the attorney's fees incurred in responding to the Complaint and the motion

3    for offensive summary judgment, inviting Defendants to file an affidavit for attorney's fees. (*See*

4    *id.* 42–43). Defendants have now filed an Affidavit for Attorney's Fees (ECF No. 27),

5    requesting a total of $33,274.50 related to the defense of the present lawsuit.

6    **II.    DISCUSSION**

7         Plaintiffs have objected, not to the reasonableness of the requested fees, but to the

8    propriety of awarding fees. First, Plaintiffs argue that Rule 11 sanctions are improper because of

9    the fiduciary duties of Plaintiffs under ERISA to diligently seek to collect delinquent

10   contributions. *See Operating Eng'rs Pension Trust Fund v. A-C Co.*, 859 F.2d 1336, 1344 (9th

11   Cir. 1988) ("Before imposing sanctions on trust funds, trustees, or their counsel, courts must

12   consider the implications of the fiduciary duties and obligations placed on those entities and

13   weigh that factor carefully in reaching their judgments."). The issue in *A-C Co.* concerned

14   counsel's "creativity in . . . representation of clients, [argument for] new interpretations of

15   agreements, and [reading] ambiguous cases in the way most favorable to their clients." *Id.* The

16   present case, however, is a matter of filing a complaint without a sufficient basis in fact for doing

17   so, an offensive practice not akin to creative interpretation of a CBA or creative litigation

18   strategy. Counsel in *A-C Co.* was sanctioned simply for ignoring the binding effect of a piece of

19   case law. *See id.* at 1343. Here, counsel filed a complaint without any reasonable factual basis

20   for doing so and made false or misleading representations to the Court during the case's

21   prosecution. Also, here, there was an improper purpose motivating these offenses, whereas no

22   improper purpose was at issue in *A-C Co. See id.* ("We have held that Rule 11 cases essentially

23   require two different types of inquiries; one involves the 'frivolousness' of the pleading and the

24   other its purpose or objective. This case involves only the first type." (citation omitted)).

25        Second, Plaintiffs argue that *sua sponte* Rule 11 sanctions are improper because no

1    contempt occurred.  Plaintiffs cite to cases that in turn cite advisory committee notes to the 1993

2    amendments to Rule 11 to the effect that *sua sponte* sanctions under Rule 11 are usually imposed

3    only in situations that are akin to contempt of court.  The Court finds *sua sponte* sanctions under

4    Rule 11 appropriate in the present case based upon counsel's misrepresentations to the Court,

5    even if sanctions could not be imposed for having filed a frivolous pleading for an improper

6    purpose, which the Court believes they can be.  Plaintiffs also argue that monetary *sua sponte*

7    sanctions are only payable to the court, that sanctions are only payable to a party upon motion,

8    *see* Fed. R. Civ. P. 11(c)(4), and that no monetary sanction is available *sua sponte* where the

9    relevant show-cause order was issued after voluntary dismissal or settlement, *see* Fed. R. Civ. P.

10   11(c)(5)(B), as in this case. *See Wohllaib v. U.S. Dist. Court for the W. Dist. of Wash.*, 401 Fed.

11   Appx. 173 (9th Cir. 2010).  But the Court did not order fees as a Rule 11 sanction *sua sponte*.

12   Rather, the Court invited Defendants to file a motion for fees under Rule 11, but explicitly did

13   not require them to do so, (*see* Hr'g Tr. 43:3–6, Aug. 1, 2012, ECF No. 26), and Plaintiff has

14   done so, (*see* Affidavit, May 3, 2012, ECF No. 27).

15           Finally, there was no stipulation to dismiss, but only a notice of settlement, which the

16   Court rejected because that purported settlement was conceived of the improper Complaint itself.

17   Dismissal or settlement before a show-cause order prevents monetary sanctions under the Rule,

18   but this must necessarily be held to apply only to sanctions arising out of pleadings collateral to

19   the dismissal or settlement itself.  A dismissal or settlement that would not exist but for the Rule

20   11-violative pleading at issue cannot prevent sanctions for having filed that pleading, or the

21   overarching purpose of the Rule would be eviscerated.  It was not the intention of Congress to

22   create a regime via the 1993 amendments under which a litigant could file a sanctionable

23   complaint and then escape remedial monetary sanctions by extracting a settlement from the

24   victim before the district court identified the impropriety of the suit and issued a show-cause

25   order.  The relief from monetary sanctions after dismissal or settlement was added to the Rule in

order to facilitate settlement. *See* Rule 11 advisory committee note to 1993 Amendments

("Parties settling a case should not be subsequently faced with an unexpected order from the

court leading to monetary sanctions that might have affected their willingness to settle or

voluntarily dismiss a case."). Where the issue is the very propriety of the complaint itself, the

concerns behind Rule 11(c)(5)(B) are at their nadir, and the concerns behind Rule 11(b) are at

their apex. A complaint that is itself brought for an improper purpose and based upon

insufficient cause necessarily causes improper expense for a defendant, and the settlement of

such a case for the sole purpose of limiting one's improper expenses in defending it and not

based upon any estimation that one might actually be found liable, as is the case here, (*see* Hr'g

Tr. 23–24), does not properly implicate the settlement bar to monetary sanctions.

## CONCLUSION

IT IS HEREBY ORDERED that Defendants are entitled to Summary Judgment on all

claims.

IT IS FURTHER ORDERED that the Clerk shall enter Judgment and close the case.

IT IS FURTHER ORDERED that Attorney Jerry C. Carter is SANCTIONED under

Federal Rule of Civil Procedure 11 in the amount of $33,274.50, to be paid to Plaintiff (or to his

attorneys in trust).

IT IS FURTHER ORDERED that the Clerk shall forward a copy of this Order and a copy

of the Transcript (ECF No. 26) of the August 1, 2012 hearing to the State Bar of Nevada.

IT IS SO ORDERED.

Dated this 12th of March, 2013.

_____
ROBERT C. JONES
United States District Judge